UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARLENA ANDERSON,

       Plaintiff,

v.

                             CASE No. 8:14-CV-256-T-TGW

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

       Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of her claims for Social Security disability benefits and supplemental security income payments.[1]  Because the decision of the Commissioner of Social Security is supported by substantial evidence and does not contain reversible error, the decision will be affirmed.

### I.

The plaintiff, who was thirty-five years old at the time of the most recent administrative hearing and who has an eleventh grade education,

---

[1] The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 12).

has worked as an injection molding machine tender, office clerk, waitress, cook, fast food worker, cashier, and door painter (Tr. 43, 45, 70).[2] She filed claims for Social Security disability benefits and supplemental security income payments, alleging that she became disabled due to bipolar disorder, plantar fasciitis and heel spurs in both feet, depression, a broken right hand, and osteoarthritis (Tr. 263). The claims were denied initially and upon reconsideration.

The plaintiff, at her request, then received a <u>de novo</u> hearing before an administrative law judge. The law judge found that the plaintiff has severe impairments of "bipolar disorder not otherwise specified (NOS); generalized anxiety disorder; borderline personality disorder; history of bilateral plantar fasciitis, status post right foot surgery; and obesity" (Tr. 17). The law judge concluded that, with these impairments, the plaintiff (Tr. 20):

> has the residual functional capacity to perform a restricted range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant remains able to lift no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. The claimant remains

---

[2] The plaintiff testified that she took some regular education classes and some special education classes, and she also attended Cambridge Career College (Tr. 45).

> able to stand or walk for a total of approximately 6
> hours of an 8-hour day with sitting occurring
> intermittently during the remaining time. The
> claimant would also remain able to sit for a total of
> approximately 6 hours of an 8-hour day. The
> claimant remains able to perform simple, repetitive
> tasks involving only occasional, non-intense
> contact (no close cooperation or teamwork) with
> co-workers and supervisors. The claimant can
> have only incidental contact with the general
> public.

The law judge determined that, despite these limitations, the plaintiff could

return to her past work as a door painter (Tr. 24). Alternatively, the law judge

decided, based upon testimony from a vocational expert, that other jobs exist

in significant numbers in the national economy that the plaintiff could

perform, such as floor waxer, sweeper cleaner, and hospital cleaner (Tr. 25).

Accordingly, the law judge ruled that the plaintiff was not disabled (id.). The

Appeals Council let the decision of the law judge stand as the final decision

of the Commissioner.

## II.

In order to be entitled to Social Security disability benefits and

supplemental security income, a claimant must be unable "to engage in any

substantial gainful activity by reason of any medically determinable physical

or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3), 1382c(a)(3)(D). The Act provides further that a claimant is not disabled if she is capable of performing her previous work. 42 U.S.C. 423(d)(2)(A), 1382c(a)(3)(B).

In this case, the plaintiff must also show that she became disabled before her insured status expired on September 30, 2012, in order to receive disability benefits. 42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. There is not a similar requirement with respect to the plaintiff's claim for supplemental security income payments.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence. 42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc), cert. denied, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. Grant v. Richardson, 445 F.2d 656 (5th Cir. 1971). Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence. Celebrezze v. O'Brient, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not disabled.  However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met.  <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

III.

The plaintiff attacks the law judge's decision on three grounds. Specifically, the plaintiff contends that the law judge erred in evaluating the opinion of her treating psychiatrist, failed to pose a proper hypothetical question to the vocational expert, and did not adequately account for her mental impairments in the residual functional capacity assessment. Each of these contentions lacks merit.

A.  As indicated, the plaintiff first argues that the law judge failed to consider properly the opinion of her treating psychiatrist, Dr. Quamrul Chowdhury (Doc. 28, pp. 13).  This contention is unpersuasive.

On May 13, 2013, Dr. Chowdhury completed a Medical Source Statement (Mental) form (Tr. 576-78).  He marked on the form that the plaintiff has poor or no ability to follow work rules; deal with the public; use judgment with the public; deal with work stresses; understand, remember, and

carry out complex job instructions and detailed (but not complex) job instructions; and behave in an emotionally stable manner. He also marked that the plaintiff has a fair ability to interact with supervisors; relate to co-workers; function independently; maintain attention and concentration; understand, remember, and carry out simple job instructions; and relate predictably in social situations. Her ability to maintain personal appearance and demonstrate reliability is good. The only explanation for these opinions was that the plaintiff was diagnosed with bipolar disorder and borderline personality disorder with symptoms of anger, anxiety, and mood unpredictability.

Opinions from treating physicians should be given substantial or considerable weight unless there is good cause for not doing so. Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004). Good cause exists when the treating physician's opinion is not bolstered by the evidence, the evidence supports a contrary finding, or the opinion is conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

The law judge set forth Dr. Chowdhury's opinion in his decision (Tr. 19, 22). With respect to Dr. Chowdhury's opinion, the law judge said (Tr. 22-23):

> Great weight in part was also accorded to Dr. Chowdhury's opinion in determining the claimant's mental residual functional capacity. Simple, repetitive tasks involving only occasional, non-intense contact with co-workers and supervisors and only incidental contact with the general public is consistent with Dr. Chowdhury's opinion of fair ability to interact with supervisors, relate to co-workers, function independently, maintain attention and concentration, follow simple job instructions, and relate predictably in social situations (Exhibit 10F).    However, Dr. Chowdhury's opinion concerning poor or no ability in certain areas was given no weight since it is inconsistent with the other evidence of record. For example, poor or no ability to behave in an emotionally stable manner is inconsistent with treatment notes from MHC [Mental Health Care, Inc.]. The claimant was never described as unable to interact with office staff, for example, and she was often described as cooperative (Exhibit 4F). Poor or no ability to follow work rules or deal with work stresses is also inconsistent with the claimant's good response to medication and her reports of feeling good while taking it (Exhibits 7F, 9F).

These reasons support the law judge's decision to discount partially Dr. Chowdhury's opinion. In other words, the law judge has shown good cause for not giving Dr. Chowdhury's entire opinion considerable or substantial weight.

Moreover, Dr. Chowdhury's opinion consists of checkmarks on a form without any meaningful explanation for the extreme assessments (see Tr. 576-78). Notably, the conclusory nature of the Questionnaire is, in itself, a recognized basis for discounting a treating physician's opinion. See Lewis v. Callahan, supra; Johns v. Bowen, 821 F.2d 551, 555 (11th Cir. 1987); Lanier v. Commissioner of Social Security, 252 Fed. Appx. 311, 314 (11th Cir. 2007); see, e.g., Brown v. Commissioner of Social Security, 442 Fed. Appx. 507, 512 (11th Cir. 2011) (the law judge stated good cause to not give controlling weight to the treating physician's opinions stated in forms which did not adequately explain his opinions). Nevertheless, the law judge accepted Dr. Chowdhury's opinion to the extent it was not extreme and supported by the record.

The plaintiff contends that, although the law judge accepted Dr. Chowdhury's opinion that the plaintiff has a fair ability to perform certain

functions, the law judge "understates and mischaracterizes the severity of what the term 'fair' ability implies" (Doc. 28, pp. 14-15). Thus, the plaintiff asserts that having only a fair ability "in so many areas of functioning would preclude 'simple repetitive tasks with only occasional non-intense contact' with co-workers, supervisors or the general public" (id., p. 14).

This contention fails. In the first place, as the plaintiff concedes, the medical source statement defines "fair" as the "[a]bility to function in this area is seriously limited, but not precluded" (Tr. 576) (emphasis added).

Moreover, the law judge could reasonably conclude that Dr. Chowdhury meant exactly what he said – the plaintiff has a fair ability to interact with supervisors, relate to co-workers, function independently, maintain attention and concentration, follow simple job instructions, and relate predictably in social situations. Had Dr. Chowdhury actually thought the plaintiff should be precluded from performing these tasks, he would have marked the category of "Poor/None" (see Tr. 576-78). Accordingly, the law judge could reasonably find that the plaintiff is "able to perform simple, repetitive tasks involving only occasional, non-intense contact (no close

cooperation or teamwork) with co-workers and supervisors" and "only incidental contact with the general public" (Tr. 20).

The plaintiff also quibbles with the law judge's reasons for rejecting those portions of Dr. Chowdhury's opinion that assign poor to no ability to function (Doc. 28, p. 15). As indicated, with respect to this portion of Dr. Chowdhury's opinion, the law judge said (Tr. 22-23):

> However, Dr. Chowdhury's opinion concerning poor or no ability in certain areas was given no weight since it is inconsistent with the other evidence of record. For example, poor or no ability to behave in an emotionally stable manner is inconsistent with treatment notes from MHC. The claimant was never described as unable to interact with office staff, for example, and she was often described as cooperative (Exhibit 4F). Poor or no ability to follow work rules or deal with work stresses is also inconsistent with the claimant's good response to medication and her reports of feeling good while taking it (Exhibits 7F, 9F).

The plaintiff argues that "[i]t is error for the ALJ to use the lack of any mention in progress notes of how Ms. Anderson got along with office staff as evidence that she could behave in an emotionally stable manner" and "the fact that Ms. Anderson was able to be cooperative in her doctor's office while trying to get treatment is in no way indicative of her ability to behave

-11-

in an emotionally stable manner outside of the supportive environment of the office of her treating psychiatrist" (Doc. 28, p. 15). However, in violation of the Scheduling Order and Memorandum Requirements (Doc. 11, p. 2), the plaintiff has failed to support her contention with citations to the record of pertinent facts. Thus, the plaintiff has not cited anything in the MHC treatment notes showing that it was unreasonable for the law judge to conclude that the opinion of poor or no ability to behave in an emotionally stable manner was inconsistent with the treatment notes. And certainly there is no evidence cited compelling the conclusion that the law judge's determination was unreasonable.

The plaintiff also contends that law judge's "assertion that Ms. Anderson 'had good response to medication and her reports of feeling good while taking it' (T22-23) implied she could follow work rules, deal with work stress or behave in an emotionally stable manner is factually incorrect and a mischaracterization of the medical records" (Doc. 28, pp. 15-16). In this regard, the plaintiff notes that her treatment records document waxing and waning symptoms of her mental impairments.

As the Commissioner correctly responds, however, substantial evidence of record is inconsistent with Dr. Chowdhury's opinion that the plaintiff had poor or no ability to follow work rules, deal with the public and work stress, use judgment, and behave in an emotionally stable manner (Doc. 29, pp. 10-12). For example, just two months before Dr. Chowdhury filled out the form, he assigned the plaintiff a Global Assessment of Functioning (GAF) score of 61, which denotes only mild symptoms (Tr. 516).[3] The law judge could therefore reasonably conclude that Dr. Chowdhury's assessment of the plaintiff's ability in these areas was incorrect.

Finally, the plaintiff asserts that the law judge erred in assigning great weight to the opinions of the nonexamining reviewers, Dr. Judith LaMarche and Dr. Ronald Chase (Doc. 28, p. 17). In this connection, the plaintiff points out that "[b]oth of these opinions were rendered without

---

[3]The GAF scale "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic and Statistical Manual of Mental Disorders, (DSM-IV-TR) (4th ed., Text Revision), p. 34. A rating of 61-70 reflects "[s]ome mild symptoms (e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships" (id.).

medical records after May 25, 2012 from Mental Health Care, Inc. and without Dr. Chowdhury's mental source opinion" (id.).

Regardless of whether Dr. LaMarche and Dr. Chase reviewed all of the evidence, the law judge did. The law judge found that the opinions of these doctors are "consistent with the claimant's history of mental health treatment" and "consistent with progress notes from MHC, which indicate the claimant responds well to medication and is able to retain a normal mental status" (Tr. 19, 22). Thus, having concluded that the opinions of Dr. LaMarche and Dr. Chase were consistent with the progress notes from MHC, the law judge plainly was of the view that there was nothing in those notes that warranted discounting the opinions of the two doctors. That conclusion is reasonable and the plaintiff has failed to show otherwise.

The plaintiff also complains that Dr. Chase is not a psychiatrist (Doc. 28, p. 17). This contention appears baseless. Thus, the law judge explained that "Drs. LaMarche and Chase are a licensed psychologist and psychiatrist, respectively" (Tr. 19). The plaintiff has not provided any reason to think that the law judge was wrong in referring to Dr. Chase as a

-14-

psychiatrist.[4]   Moreover, it would be extremely unusual for the Social Security Administration to refer a mental evaluation to a medical doctor that was not a psychiatrist.  Notably, there is no question that Dr. LaMarche was a psychologist and her opinion was essentially the same as Dr. Chase's opinion.

In all events, the law judge did not err in giving weight to the opinions of Dr. LaMarche and Dr. Chase.  Although such opinions are generally afforded less weight, the reports of nonexamining reviewing physicians may be credited over the opinion of the treating physician when good cause is stated for discounting the treating physician's opinion.  See Jones v. Bowen,  810 F.2d 1001, 1005 (11th Cir. 1986); Forsyth v. Commissioner of Social Sec., 503 Fed. Appx. 892, 893 (11th Cir. 2013) (law judge stated good cause to afford more weight to the opinion of a nonexamining physician than to the opinion of the treating physician).  As discussed above, the law judge stated good cause for partially discounting Dr. Chowdhury's opinion.

---

[4]A Google search revealed a psychiatrist from Orlando named Ronald M. Chase. He should not be confused with an orthopedic surgeon from Brooklyn, New York, also named Ronald M. Chase.

B.  As a second issue, the plaintiff argues that the law judge "failed to pose a hypothetical question to the [vocational expert] which accurately and comprehensively described her impairments" (Doc. 28, p. 18). In particular, the plaintiff asserts that the hypothetical question failed to account for her mental limitations and bilateral foot pain.

"In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Wilson v. Barnhart, 284 F.3d 1219, 1227 (11th Cir. 2002).  However, the administrative law judge is not required to include restrictions in the hypothetical question that she properly finds are unsupported.  Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

The hypothetical question is not deficient as long as it corresponds to the residual functional capacity. Here, the residual functional capacity matches the hypothetical question that the law judge posed to the vocational expert (compare Tr. 20 with Tr. 71).  Consequently, the hypothetical question is not flawed.  The appropriate challenge in these circumstances is directed not against the hypothetical question, but against

-16-

the residual functional capacity finding (which is the plaintiff's third issue). Accordingly, the contentions asserted in this issue will be viewed as directed at the residual functional capacity finding.

The plaintiff contends that the absence of limitations in the hypothetical question related to her bilateral foot pain was error (Doc. 28, p. 19). Thus, pointing to the treatment notes of Dr. Robert Valins, the plaintiff complains that the hypothetical question did not allow for a sit/stand option or the need to elevate her feet throughout the day.

Although Dr. Valins diagnosed the plaintiff with bilateral plantar fasciitis, he provided no opinion setting forth any functional limitations from that condition (see Tr. 497-506, 519). To the contrary, as the law judge discussed, Dr. Valins's notes indicate that "[t]here was good anatomic correction and the claimant was reportedly pleased with the outcome" following her surgery (Tr. 22). Therefore, the law judge could reasonably conclude that, despite the plaintiff's plantar fasciitis, she could perform work within the law judge's residual functional capacity determination.[5]

---

[5]It is noted that the law judge asked the vocational expert an alternative hypothetical question that has physical limitations of light work, standing and walking at any one time to thirty minutes, and when sitting for thirty minutes, the ability to stand and stretch for one

To the extent the plaintiff relies on her hearing testimony to support her contention, such reliance is unavailing. The law judge found that the plaintiff was not fully credible, and the plaintiff has not articulated a distinct challenge to that determination.  In the last sentence, the plaintiff purports to tag a credibility challenge on to her memorandum (Doc. 28, p. 25).   That attempt violates the Scheduling Order and Memorandum Requirements because it does not raise the credibility argument as a discrete issue, and it does not support such an issue by citation to the record of the pertinent facts (Doc. 11, p. 2).   Therefore, any credibility challenge is forfeited (id.).

The plaintiff also suggests that the operative hypothetical question failed to include the limitations set forth by Dr. Chowdhury (Doc. 28, p. 19). As discussed above, the law judge did not credit Dr. Chowdhury's opinion in its entirety.   The law judge, furthermore, gave ample reasons supported by substantial evidence for this finding.   Accordingly, the law

---

to three minutes (Tr. 72).  The expert testified that there were jobs in the national economy that an individual with these physical limitations could perform (id.).

judge was not required to include in the pertinent hypothetical question limitations that have been properly rejected.

The plaintiff, dragging out the tired argument based on <u>Winschel</u> v. <u>Commissioner of Social Security</u>, 631 F.3d 1176, 1180-81 (11th Cir. 2011), further contends that the operative hypothetical question did not account for the law judge's finding that the plaintiff has a moderate limitation in concentration, persistence or pace (Doc. 28, p. 20). However, the law judge determined that that limitation was accommodated by restricting the plaintiff to "simple, repetitive tasks" (Tr. 20).

The plaintiff, citing to <u>Winschel</u>, suggests that a limitation to "simple, repetitive tasks" does not adequately account for a moderate limitation in concentration, persistence or pace (Doc. 28, p. 20). However, <u>Winschel</u> does not state such a holding; rather, it merely states that a hypothetical question to a vocational expert must either explicitly, or implicitly, account for limitations in concentration, persistence or pace. 631 F.3d at 1181.

Accordingly, Eleventh Circuit caselaw holds that a limitation to simple, routine tasks adequately addresses a plaintiff's moderate limitations

in concentration, persistence or pace where the record shows that the plaintiff could perform such tasks.   See, e.g., Hurst v. Commissioner of Social Security, 522 Fed. Appx. 522 (11th Cir. 2013) (simple, routine repetitive tasks); Dawson v. Commissioner of Social Security, 528 Fed. Appx. 975 (11th Cir. 2013) (routine, repetitive tasks with up to three-step instructions); Smith v. Commissioner of Social Security, 486 Fed. Appx. 874 (11th Cir. 2012) (the performance of simple, routine and repetitive tasks adequately accounts for a moderate limitation in ability to maintain concentration, persistence, or pace); Scott v. Commissioner of Social Security, 495 Fed. Appx. 27 (11th Cir. 2012) (simple, routine tasks or unskilled work accounted for moderate limitations in concentration, persistence, or pace); Jarrett v. Commissioner of Social Security, 422 Fed. Appx. 869, 872 (11th Cir. 2011) (the plaintiff could perform simple tasks).   And there are a number of other Eleventh Circuit cases with the same ruling.   Accordingly, the plaintiff's argument that her moderate deficit in concentration, persistence or pace cannot be accommodated by a limitation to "simple, repetitive tasks" is meritless.

The plaintiff speculates that the limitations to "only occasional, non-intense contact (no close cooperation or teamwork) with co-workers and

supervisors" and "only incidental contact with the general public" are insufficient in light of her thoughts of suicide, cutting herself, and episodes of decompensation (Doc. 28, p. 20). The plaintiff, however, provides no evidentiary support for such speculation.

The plaintiff's next argument is that the law judge erred when she found the plaintiff had one to two episodes of decompensation (id.). The plaintiff points out that, in addition to her two hospitalizations in 2012, she was also hospitalized from July 12, 2011, through July 14, 2011, and from September 30, 2010, to October 4, 2010 (id.).

In her discussion of the plaintiff's mental condition, the law judge explained (Tr. 19):

> As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation, each of extended duration. Treatment records from Austin State Hospital indicate the claimant required intense treatment for suicidal ideation, insomnia, a history of methamphetamine dependence, bipolar disorder, and cannabis abuse in early 2012 (Exhibit 3F). The claimant then required crisis stabilization services in March of 2012 into April for suicidal ideation (Exhibit 4F). Since that time, the record contains no evidence of the claimant decompensating.

-21-

The plaintiff has failed to show that the law judge erred in her assessment of episodes of decompensation. As recognized by the law judge (Tr. 18), "[t]he term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. Part 404, Subpart P, App. 1, §12.00C4. Assuming that the incidents in 2010 and 2011 were episodes of decompensation, there is no evidence that each lasted for two weeks. In fact, the plaintiff states that those hospitalizations lasted from July 12, 2011, through July 14, 2011, and from September 30, 2010, to October 4, 2010 (Doc. 28, p. 20). Accordingly, the plaintiff has not shown that the law judge's finding was incorrect.

Finally, the law judge did not base her hypothetical question solely upon the opinions of the nonexamining doctors, as the plaintiff asserts (id., p. 21). Rather, the law judge relied on, and discussed, the objective medical evidence, including the opinion of Dr. Chowdhury and Dr. Valins's treatment notes. As previously discussed, the law judge assigned great weight to Dr. Chowdhury's opinion of fair ability to interact with supervisors, relate to co-workers, function independently, maintain attention and

-22-

concentration, follow simple job instructions, and relate predictably in social situations (Tr. 22).

C. The plaintiff's final contention, which corresponds with her second issue, challenges the law judge's residual functional capacity determination. Specifically, the plaintiff argues that the law judge failed to account adequately for her mental impairments in the residual functional capacity assessment (Doc. 28, p. 21). This argument also fails.

The plaintiff asserts that the law judge's Psychiatric Review Technique ("PRT") assessment was flawed (id., pp. 22-25). The law judge must include in her decision an assessment of the areas of activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. 20 C.F.R. 404.1520a(e)(4), 416.920a(e)(4). In this connection, the law judge said (Tr. 18-19):

> In activities of daily living, the claimant has mild restriction. The claimant is reportedly able to tend to her personal care, prepare her own meals, and do laundry, consistent with no more than mild limitation in activities of daily living (Exhibit 3E). In social functioning, the claimant has moderate difficulties. The claimant's allegations of problems getting along with others and difficulty being in crowds is consistent with her particular mental

conditions. However, the claimant is reportedly able to shop in stores and have friends visit, consistent with at least some ability to function socially (Exhibit 3E, Hearing Testimony). Considering the evidence of record as a whole, the claimant is found to have moderate limitation in social functioning. With regard to concentration, persistence, or pace, the claimant has moderate difficulties. Problems with attention and concentration are found to be consistent with the claimant's particular mental conditions. However, the claimant's treatment records often describe her attention and concentration as adequate (Exhibits 7F, 9F). The claimant is therefore found to have some difficulties maintaining concentration, persistence, or pace, but no more than moderate. As for episodes of decompensation, the claimant has experienced one to two episodes of decompensation, each of extended duration. Treatment records from Austin State Hospital indicate the claimant required intense treatment for suicidal ideation, insomnia, a history of methamphetamine dependence, bipolar disorder, and cannabis abuse in early 2012 (Exhibit 3F). The claimant then required crisis stabilization services in March of 2012 into April for suicidal ideation (Exhibit 4F). Since that time, the record contains no evidence of the claimant decompensating.

The law judge also explained (Tr. 19):

Because the claimant's mental impairments do not cause at least two marked limitations or one marked limitation and repeated episodes of

decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.    In determining the claimant's level of limitation within the "paragraph B" criteria, the undersigned accorded great weight to the opinions of Disability Determination Services (DDS) psychological consultants Judith LaMarche, Ph.D. and Ronald Chase, M.D.    After thoroughly reviewing the claimant's file, Drs. LaMarche and Chase opined the claimant had mild limitation in activities of daily living, moderate limitation in both social functioning and maintaining concentration, persistence, or pace, and no episodes of decompensation of extended duration (Exhibits 3A, 4A, 7A, 8A).    Drs. LaMarche and Chase are a licensed psychologist and psychiatrist, respectively, they are familiar with the evidentiary requirements of the Social Security Regulations, and their assessments are consistent with the claimant's history of mental health treatment. The claimant's treatment records indicate the claimant reportedly does well when on medication (Exhibits 4F, 7F, 9F).

The undersigned also accorded great weight in part to the opinion of treating psychiatrist Quamrul Chowdhury, M.D. in determining the claimant's level of limitation within the "paragraph B" criteria. Dr. Chowdhury opined the claimant had poor or no ability to follow work rules, deal or use judgment with the public, deal with work stresses, understand, remember, or carry out detailed or complex job instructions, or behave in an emotionally stable manner. Dr. Chowdhury also opined the claimant had fair ability to interact with

supervisors, relate to co-workers, function independently, maintain attention and concentration, understand, remember, and carry out simple job instructions, and relate predictably in social situations (Exhibit 10F). The areas Dr. Chowdhury felt the claimant retained fair ability to function in are consistent with her treatment records. However, the claimant's good response to treatment, including medication, is inconsistent with loss of all ability in any area (Exhibits 4F, 7F, 9F). Thus, Dr. Chowdhury's opinion was given great weight in part and the claimant is found to be limited within the "paragraph B" criteria to the levels discussed above. However, no weight is given to his opinions in the areas where he indicated claimant had poor to no ability.

Contrary to the plaintiff's contention (Doc. 28, pp. 22-23), the law judge did not, in assessing the plaintiff's mental functioning, ignore the opinion of Dr. Chowdhury. Thus, the above quotation reflects that the law judge considered the medical evidence as a whole, and, in fact, assigned great weight to part of Dr. Chowdhury's opinion. As previously explained, the law judge's assessment of Dr. Chowdhury's opinion was reasonable and supported by substantial evidence of record. Moreover, as the Commissioner points out, Dr. Chowdhury's assessment of the plaintiff's capabilities in

certain areas as "fair" means that the ability to function is "not precluded" (Tr. 576).

The plaintiff argues that the law judge's PRT assessment improperly mirrors the opinions of Dr. LaMarche and Dr. Chase (Doc. 28, p. 24). This is incorrect. Although these doctors opined that the plaintiff experienced no episodes of decompensation of extended duration, the law judge found that the plaintiff had one to two such episodes.

Importantly, the law judge found that the plaintiff had severe mental impairments of bipolar disorder NOS, generalized anxiety disorder, and borderline personality disorder. Moreover, the law judge limited the plaintiff mentally to "simple, repetitive tasks involving only occasional, non-intense contact (no close cooperation or teamwork) with co-workers and supervisors" and with "only incidental contact with the general public" (Tr. 20). The plaintiff has not pointed to anything in the record showing that these mental functional limitations are unreasonable or not supported by substantial evidence. She certainly does not demonstrate that the evidence compels greater functional limitations. Therefore, the plaintiff's challenge to the law judge's mental residual functional capacity finding fails.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby **AFFIRMED**. The Clerk shall enter judgment in accordance with this Order and **CLOSE** this case.

DONE and ORDERED at Tampa, Florida, this 24th day of March, 2015.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE